UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

---X

ANGIE VELEZ, MEGAN HECKARD, and HILLARY WRIGHT,

Plaintiff,

-against-

ARTEM PRUSAYEV (SHIELD # 13776); and THE CITY OF NEW YORK,

Defendants.

---X

Docket No.:

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiffs, ANGIE VELEZ, MEGAN HECKARD, and HILLARY WRIGHT, by their attorneys, COHEN&GREEN P.L.L.C. and Gideon Orion Oliver, hereby complains of the defendants, upon information and belief, as follows:

1. Artem Prusayev should not be on any police force.

2. Armed with a short temper, disregard for rules, and his NYPD firearm and extendable baton, Prusayev attempted to intimidate protesters who ***dared*** to ask him to wear a mask.

3. But the incident was caught on video and went viral.

4. In that clear video, after being asked to just ***put a mask on***, Prusayev can be seen grinning and screaming at protesters, gun in hand and ready — before gritting his teeth and swinging his extendable baton as a threat:









5. Prusayev is a danger to every New Yorker every day he wears a uniform. And he is a danger to the First Amendment every day he gets to continue wielding lethal force.

6. As John Jay Professor and former master NYPD instructor, Keith Ross, put it in a Pix11 interview, "this wasn't really a permissible time to take out his firearm."

7. Yet, Prusayev has not faced a consequence. Not one.

8. In fact, as he walked away from the scene, Plaintiff Velez told him, "Remember us. This is not the end. We will hold you accountable."

9. And Prusayev's response said it all:

"***Eh. I don't think so. I'm pretty sure I'm fine***."

10. As far as the City and NYPD are concerned, just so.

11. But, since the City and NYPD clearly will not, this suit seeks to hold Prusayev accountable.

12. And the question is this: are there ***any*** consequences when a police officer pulls ***three different weapons*** on protesters because he doesn't like their message?

13. Plaintiffs hope — genuinely, hope — the answer is "Yes."

**PARTIES, VENUE AND JURISDICTION**

14. At all times mentioned herein, plaintiff, Angie Velez (Ms. Velez; she/her), was a resident of Kings County, in the State of New York.

15. At all times mentioned herein, plaintiff Megan Heckard (Ms. Heckard; she/her), was a resident of Kings County, in the State of New York.

16. At all times mentioned herein, plaintiff Hillary Wright (Ms. Wright; she/her), was a resident of Kings County, in the State of New York.

17. At all relevant times mentioned herein, defendant, City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

18. At all times hereinafter mentioned, defendant, POLICE SERGEANT ARTEM PRUSAYEV was an adult employed by the City of New York as a member of the NYPD. Defendant Prusayev is sued herein in his official and individual capacities.

19. Upon information and belief, his annual salary is $117,000, and he has received favorable transfers since this incident.

20. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

21. Venue is proper pursuant to 28 U.S.C. § 1391, et seq., in the Eastern District of New York, because it is where the relevant events took place, and where Plaintiffs reside. The City of New York and all Defendants, upon information and belief, also have places of business within this District.

22. Plaintiff timely served a Notice of Claim on the municipal defendant and complied with all conditions precedent to commencing an action under state law.

23. At least thirty days have elapsed since service of plaintiff's Notice of Claim and adjustment and payment thereof has been neglected or refused.

24. This action has been initiated within one year and ninety days of the accrual of plaintiff's claims pursuant to New York State Law.

**RELEVANT FACTS**

25. On January 12, 2021, Plaintiffs were part of a group of protesters marching near the Barclay's Center in Brooklyn.

26. They were there to protest the murder of Andre Hill at the hands of police in Columbus, Ohio.

27. Artem Prusayev was there as part of NYPD's general practice of policing protests.

28. Prusayev was standing in public, interacting with the public, and entirely unmasked.

29. Upon information and belief Prusayev also wore politically oriented patches on his uniform.

30. Wearing any politically-oriented patch on an NYPD uniform violates the Patrol Guide.

31. Nonetheless, Prusayev wore a patch declaring "Caution: Does Not Play Well With

Others."

32. If nothing else, that patch was accurate. He does not.

33. But he also wore a patch describing the movement of Black Lives Matter Protests throughout 2020 as "riots" — taking a position against those involved in those protests and echoing a political effort to brand those protests as "riots."

34. That patch was less accurate.

35. A group of about 8 protesters approached Prusayev and asked him to put on his mask.

36. Instead, Prusayev pulled out and brandished his NYPD-issue firearm.

37. Prusayev intended to send a clear message: "Keep messing with me and I will shoot you."

38. Prusayev also did so in clear retaliation for the message the protesters — including Plaintiffs were sending.

39. In other words, Prusayev meant to convey that masking rules and public safety were beneath him.

40. The protesters, Plaintiffs among them, immediately began asking how he could possibly think such an action was okay. For example, Plaintiff Velez said, "Where's your training? How is this okay?"

41. Similarly, Plaintiff Heckard began recording the incident.

42. After screaming and standing with the firearm at his side and ready for approximately 10 second, Prusayev holstered the gun and pulled out his pepper spray

43. He did so in a rage and with his teeth gritted.

44. He also did so, upon information and belief, in retaliation for the comments

Plaintiffs and other protesters made, as well as in retaliation and an attempt to deter the recording Plaintiff Heckard and other protesters were doing.

45. Prusayev pointed his pepper spray directly at Plaintiff Velez's face, among other protesters.

46. After waiving his pepper spray around, Prusayev drew his extendable, police-issue baton.

47. Once again, he did so in a rage and with his teeth gritted.

48. He also did so again, upon information and belief, in retaliation for the comments Plaintiffs and other protesters made, as well as in retaliation and an attempt to deter the recording Plaintiff Heckard and other protesters were doing.

49. Prusayev swung the baton around, threatening protesters.

50. The larger group of protesters ***was*** successfully deterred from protesting.

51. Because of Prusayev's threats, the march dwindled from approximately 45 people to approximately 20 people.

52. Eventually, other members of the NYPD walked Prusayev away from the scene.

53. As he was leaving, Plaintiff Velez said to him, "Remember us. This is not the end. We will hold you accountable."

54. Prusayev responded, "Eh, I don't think so. I'm pretty sure I'm fine."

55. Countless protests directed at Prusayev's conduct have followed.

56. There have been various weekly protests, and NYPD has even arrested large numbers of protesters ***for*** protesting the failure to fire Prusayev.

57. And extensive media coverage has followed too — including, as noted above, a former master NYPD instructor noting on TV that, "this wasn't really a permissible time to take

out his firearm" and also opining there was nothing giving rise to any need for anything like the force and threat Prusayev escalated to.

58. In other words, and upon information and belief, decision makers at the highest level of NYPD and the City are aware of Prusayev's conduct — and have seen the video that went viral.

59. Upon information and belief, decision makers at NYPD decided not to discipline Prusayev for his conduct.

60. Upon information and belief, decision makers at the City decided not to discipline Prusayev for his conduct.

61. Upon information and belief, Prusayev has faced absolutely no discipline from this incident.

62. Upon information and belief, Prusayev, in fact, received a favorable transfer in or around November of 2021.

63. And upon information and belief, unless something changes, Prusayev's violence will result in more favorable treatment at the NYPD.

**FIRST CAUSE OF ACTION**
**(Section 1983 First Amendment Retaliation Against Defendant Prusayev)**

64. Plaintiffs hereby reallege and incorporate all of the preceding paragraphs as though they were fully set forth herein.

65. Defendant Prusayev retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment.

66. Defendant Prusayev engaged in the acts and omissions complained of herein in

retaliation for Plaintiff's protected speech and/or conduct.

67. Defendant Prusayev engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

68. Defendant Prusayev engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

69. Upon information and belief, Defendant Prusayev engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment-based claims with malice.

70. As a result of Defendant Prusayev's acts and omissions, Defendant Prusayev deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

71. Defendant Prusayev unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against him.

**SECOND CAUSE OF ACTION**
**(New York State Law – Assault Against All Defendants)**

72. Plaintiffs hereby reallege and incorporate by reference all of the preceding paragraphs as though they were fully set forth herein.

73. Defendant Prusayev intentionally put Plaintiffs in an imminent apprehension of an offensive contact by drawing three different weapons, and brandishing them and/or pointing them at Plaintiffs and the other protesters nearby.

74. Defendant Prusayev did so with malice and anger.

75. The City of New York is liable for Defendant Prusayev's actions under the doctrine of *respondeat superios*

76. As a result of Defendant Prusayev's acts and omissions, Defendant Prusayev deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

77. Defendant Prusayev unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against him.

**THIRD CAUSE OF ACTION**
**(New York Civil Rights Law § 79-P Against All Defendants, By Plaintiff Heckard)**

78. Plaintiffs hereby reallege and incorporate by reference all of the preceding paragraphs as though they were fully set forth herein.

79. Plaintiff Heckard was exercising her rights under New York Civil Rights Law § 79-P, the New Yorker's Right to Monitor Act, to record law enforcement activity.

80. In drawing two weapons and brandishing them, all Defendant Prusayev violated New York Civil Rights Law § 79-P in that Plaintiff Heckard "exercised or attempted to exercise the right established in subdivision two of this section to record a law enforcement activity and an officer acted to interfere with that person's recording of a law enforcement activity" in one of the specified ways.

81. New York City is liable under New York Civil Rights Law § 79-P for Prusayev's actions.

82. New York Civil Rights Law § 79-P creates a private right of action that explicitly provides for punitive damages and injunctive relief, as well as mandatory attorneys' fees and expert fees.

83. Defendants' actions violate New York Civil Rights Law § 79-P such that all the remedies available thereunder are appropriate.

**FOURTH CAUSE OF ACTION**
**(Negligent Hiring, Training and Supervision Against the City of New York)**

84. Plaintiffs hereby reallege and incorporate by reference all of the preceding paragraphs as though they were fully set forth herein.

85. Upon information and belief, Defendant City supervised and trained Artem Prusayev.

86. That training failed to live up to basic requirements for an official who will carry multiple deadly weapons.

87. And the City has refused so far to discipline or even meaningfully investigate Prusayev's conduct, despite extensive notice thereof.

88. Defendant City's actions therefore make it liable to Plaintiffs for the damages caused by Artem Prusayev.

**DEMAND FOR A JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## CONCLUSION AND PRAYER

**WHEREFORE**, the plaintiff demands judgment against the individual defendants and the City of New York as follows:

i. actual and punitive damages against the Defendant Prusayev in an amount to be determined at trial;

ii. actual damages in an amount to be determined at trial against the City of New York;

iii. an injunction and declaratory relief pursuant to New York Civil Rights Law § 79-P;

iv. attorney's fees pursuant to, inter alia, 42 U.S.C. §1988, New York Civil Rights Law § 79-P, and New York common law;

v. disbursements, and costs of the action;

vi. systemic equitable relief, pursuant to New York Civil Rights Law § 79-P;

vii. expert costs and fees pursuant to New York Civil Rights Law § 79-P; and

viii. such other relief as the Court deems just and proper.

Dated: Queens, New York
March 31, 2022

**COHEN&GREEN P.L.L.C.**

By: ______________________
J. Remy Green
Elena L. Cohen
Jessica Massimi

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
f: (929) 888-9457
e: elena@femmelaw.com
remy@femmelaw.com
jessica@femmelaw.com

**GIDEON ORION OLIVER**

________________________________
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
e: Gideon@GideonLaw.com